UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEGASH HAILE MALEDE, | : | Civil No. 1:22-CV-01031 |
| | : | |
| Petitioner, | : | (Magistrate Judge Schwab) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG LOWE, *in his Official* | : | |
| *Capacity as Warden of Pike County* | : | |
| *Correctional Facility et al.*, | : | |
| | : | |
| Respondents. | : | |

**<u>MEMORANDUM OPINION</u>**

## I.  Introduction.

Petitioner Negash Haile Malede ("Malede"), an alien in immigration custody, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention without a bond hearing.   He requests that the court conduct a bond hearing at which the Government bears the burden of establishing that his continued detention is justified.   For the following reasons, we will grant Malede's petition for a writ of habeas corpus to the extent that the court will order that an immigration judge hold a bond hearing.

## II.   Background and Procedural History.

Malede, who is a 66-year-old native and citizen of Ethiopia, was admitted to the United States in 1984 as a refugee. *See doc. 1* at ¶ 14.   In 1986, his status was adjusted to that of a lawful permanent resident, and he has resided in the United States ever since. *Id.*   Malede belongs to a minority Jewish community known as the Beta Israel Community, also referred to as "Falasha." *Id*. at ¶ 15.   After the Derg Communist regime gained control of Ethiopia during the 1980s, Malede claims that he and other members of the Beta Israel Community were targets of persecution, which caused him to flee to Sudan. *Id*. at ¶¶ 15-17.   After he discovered that several of his siblings had been killed, Malede was admitted to the United States as a refugee, settling in the Washington, D.C. area. *Id*. at ¶¶ 17-18.

In 1996, Malede was convicted in the Superior Court of the District of Columbia of stalking, two counts of threats to injure a person, assault with intent to kill while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license, and he was sentenced to 14-43 years of imprisonment. *Id*. at ¶ 20.   This conviction stemmed from an April 1994 shooting of a woman with whom Malede had a personal relationship.   Malede claims to have almost no

memory of the event due to a beating he received a few weeks prior that left him hospitalized and suffering from acute mental instability. *Id*. at ¶¶ 21-23.

On February 3, 2021, Malede completed his criminal sentence, and he was then transferred into Immigration and Customs Enforcement ("ICE") custody at Clinton County Correctional Facility in McElhattan, Pennsylvania. *Id*. at ¶ 26.   On May 20, 2022, Malede was transferred to Pike County Correctional Facility where he currently remains detained pursuant to 8 U.S.C. § 1226(c). *Id*.   On August 13, 1996, the Immigration and Naturalization Service issued an order to show cause and notice of hearing, charging Malede with deportability on the grounds of being a noncitizen convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and being a noncitizen convicted of a firearm offense, § 1227(a)(2)(C). *Id*. at ¶ 27.   Per Malede, "[t]hose proceedings were administratively closed while [he] served his criminal sentence." *Id*.

Once Malede was transferred to ICE custody in 2021, his case was re-opened, and at his May 20, 2021, master calendar hearing, Malede "conceded removability as to the firearm offense charge and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Id*. at

3

¶ 28.   Due to his Falasha identity and the ongoing civil war in Ethiopia, Malede

argued that he could be subjected to torture if he returned to Ethiopia. *Id*. at ¶ 29.

Additionally, Malede argued that his mental instabilities could also make him a

target should he return to Ethiopia. *Id*.   On June 30, 2021, Malede's case was

continued so that he could be psychiatrically evaluated. *Id*. at ¶ 30.   On September

28, 2021, the immigration court held an individual hearing, and stated that it would

issue a written decision; however, the immigration court also scheduled the case

for an oral decision on November 3, 2021, as "a place holder in case a written

decision was not issued by then." *Id*. at ¶ 31.

According to Malede, on November 2, 2021, the immigration court informed

Malede that it would issue an oral decision on January 4, 2022[1]; however, at

Malede's January 4, 2022, hearing, the immigration court informed Malede that it

would issue a written decision in two weeks. *Id*. at ¶ 32.   On March 8, 2022, the

immigration judge ("IJ") ordered Malede removed to Ethiopia, denying all of his

claims for relief. *Id*. at ¶ 33.   Malede filed a notice of appeal to the Board of

_____

[1] In their brief in opposition to Malede's petition, the respondents note,
without further explanation, that "[b]ecause of issues related to quarantining and
COVID-19, Malede's immigration proceedings were delayed until January 2022.
*Doc. 14* at 4 (citing *doc. 14-3* at 1).

Immigration Appeals ("BIA") on March 17, 2022, and he sought an extension of the briefing deadlines on April 19, 2022, and the court extended the deadline to May 26, 2022. *Id*. at ¶ 34; *doc. 14* at 5 (citing *doc. 14-4* at 1).   As of June 30, 2022, Malede's appeal is still pending. *Doc. 1* at ¶ 34.

According to Malede, he suffers from significant mental and physical health issues as a result of his detention. *Id*. at ¶ 35. Malede has been diagnosed with "diabetes mellitus, type II; hyperlipidemia; hypertension; chronic heart disease and myocardial progressive disease; polisosteoarthritis; glaucoma; latent tuberculosis infection; and an enlarged prostate." *Id*. at ¶ 36.   Additionally, Malede "meets the criteria for major neurocognitive disorder (dementia), executive functioning deficit, major depressive disorder, and post-traumatic stress disorder." *Id*. at ¶ 37. As a result of these mental issues, Malede suffers from progressive memory loss, agitation, and an inability to properly organize his emotions, which places him at risk of undue influence from others. *Id*.

Due to his myriad of health issues, Malede is "dependent on the uninterrupted administration of prescribed medications for several of these conditions, including diabetes, chronic kidney disease, high blood pressure, high cholesterol, major neurocognitive disorder, and severe depression." *Id*. at ¶ 38.

5

Additionally, Malede takes antidepressants and insulin. *Id.*   According to Malede, while at Clinton County Correctional Facility, he was housed with the criminally convicted and was confined in isolation on four separate occasions of up to 23 hours per day. *Id.* at ¶¶ 39-40.   Per Malede, when he complained to the medial staff that he had not received his medication, he was placed into isolation and left there for 53 days, which resulted in him losing around 15 pounds. *Id.* at ¶ 40. Malede claims, while in isolation, his body "broke down" and his memory deteriorated. *Id.* at ¶ 41.   According to Malede, he was once given the wrong medication, and when he contracted COVID-19, the medical staff only gave him cough medicine and did not test him for COVID-19 until five to six days later. *Id.* at ¶¶ 42-43.   Per Malede, he remains detained with individuals who are serving criminal sentences at Pike County Correctional Facility, and he remains underweight. *Id.* at ¶ 44.

Should Malede be released from detention, the Public Defender Service for the District of Columbia ("PDS"), formed a release plan "that would ensure Mr. Malede has adequate housing and social and medical services if released from detention." *Id.* at ¶ 45.   Moreover, if released from detention, Malede claims he would be sheltered in a specialized unit for similarly situated individuals and will

receive adequate medical care for his conditions. *Id*. at ¶¶ 46-47.   Per Malede, his old age and medical conditions render him unlikely to endanger his community. *Id*. at ¶ 48.   Additionally, "his criminal convictions are from more than 25 years ago during a time when he suffered from temporary psychosis, which he no longer experiences now." *Id*.   Because of these reasons and his dependency on caregivers, Malede claims he is unlikely to pose a risk of flight. *Id*.

On June 30, 2022, Malede, through counsel, filed the current petition for a writ of habeas corpus contending that his continued detention without a bond hearing violates due process. *Doc. 1*.   He requests that the court issue a writ of habeas corpus and conduct a bond hearing. *Id*. at 27-28.   He also requests "such further relief as the Court deems just and proper." *Id*. at 28.

After we ordered the respondents to show cause why Malede should not be granted habeas corpus relief, Malede filed a motion for temporary restraining order and/or preliminary injunction and a brief in support. *Docs. 8*, *9*.   On July 14, 2022, the respondents filed a response to the petition, and Malede filed a reply. *See docs*. *14*, *18*.   On July 25, 2022, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

Before we begin our discussion, we note that Malede's underlying petition, *doc. 1*, and his motion for a temporary restraining order and/or preliminary injunction, *doc. 8*, request the same relief and are nearly identical.   And because we will grant Malede's petition expeditiously, we need not address the arguments raised in his motion for a temporary restraining order and/or preliminary injunction.

## III.    Discussion.

### A.   The only proper respondent in this case is Warden Craig Lowe.

The petition names as respondents: Craig A. Lowe, the Warden of the Pike County Correctional Facility; Brian McShane, Acting Director of the Philadelphia Field Office of U.S. ICE and Removal Operations; Merrick Garland, the Attorney General; and Alejandro N. Mayorkas, a Secretary of the Department of Homeland Security. *Doc. 1*.   Pursuant to 28 U.S.C. § 2243, the writ of habeas corpus, or order to show cause, shall be directed to the petitioner's custodian.   The warden of the prison where the petitioner is held is considered the custodian for purposes of a habeas action. *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004).   Because Malede is incarcerated at the Pike County Correctional Facility, Warden Lowe is the proper

respondent.   McShane, Garland, and Mayorkas are not Malede's custodians.

Thus, we dismiss them as respondents.

### B.   Malede is entitled to a bond hearing before an immigration judge.

Malede contends that his mandatory detention under 8 U.S.C. § 1226(c)

without a bond hearing has become unreasonable and, thus, a violation of the Fifth

Amendment due process clause.   For the reasons set forth below, we agree.

8 U.S.C. § 1226 "is the pre-removal provision of the INA and 'generally

governs the process of arresting and detaining . . . aliens pending their removal.'"

*Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 213–14 (3d Cir.

2018) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018)).   That

provision "distinguishes between two different categories of aliens"—those

detained under § 1226(a) and those detained under § 1226(c). *Jennings*, 138 S. Ct.

at 837.   "[A]n alien detained under § 1226(a) must be afforded a bond hearing

before an immigration judge to determine if the alien's detention is necessary

while he or she awaits immigration proceedings." *Guerrero-Sanchez*, 905 F.3d at

214.   But § 1226(c) provides for mandatory detention of, among others, aliens

who were convicted of certain crimes. 8 U.S.C. § 1226(c).   Section 1226(c)

"mandates detention of any alien falling within its scope and that detention may

9

end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 138 S. Ct. at 847.   Here, the parties agree that Malede is being held pursuant to § 1226(c).

Although 8 U.S.C. § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, *Demore v. Kim*, 538 U.S. 510, 531 (2003), prolonged detention raises due process concerns.   The Third Circuit addressed the prolonged detention of aliens under § 1226(c) in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015).

In *Diop*, applying the cannon of constitutional avoidance, the Third Circuit held that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." 656 F.3d at 231.   The court reasoned that "[a]t a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has

10

justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* at 232.   Thus, the court concluded that when detention becomes unreasonable, which determination is based on a "fact-dependent inquiry," "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233.

The Third Circuit in *Diop* stated that "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past" the five-month threshold identified in *Demore* as the time it generally takes to decide a case in which the alien chooses to appeal. *Id.* at 234. And the court concluded that "there can be no question that Diop's detention for nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable and, therefore, a violation of the Due Process Clause." *Id.* at 234–35.

In *Chavez-Alvarez,* the Third Circuit granted the habeas petition of an alien who claimed that the Government was violating his right to due process by

11

detaining him under 8 U.S.C. § 1226(c) for a prolonged period without a bond

hearing. 783 F.3d at 478.   In that case, Chavez-Alvarez had been detained for over

a year and a half at the time of the district court's decision. *Id.* at 477 n.11.   Noting

that whether detention has become unreasonable is "highly fact-specific," the court

recognized that at a certain point continued detention without a bond hearing

violates due process:

> [D]ue process requires us to recognize that, at a certain
> point—which may differ case by case—the burden to an alien's
> liberty outweighs a mere presumption that the alien will flee
> and/or is dangerous.   At this tipping point, the Government can
> no longer defend the detention against claims that it is arbitrary
> or capricious by presuming flight and dangerousness: more is
> needed to justify the detention as necessary to achieve the goals
> of the statute.   As we said in *Diop,* section 1226(c) "implicitly
> authorizes detention for a reasonable amount of time, after
> which the authorities must make an individualized inquiry into
> whether detention is still necessary to fulfill the statute's
> purposes of ensuring that an alien attends removal proceedings
> and that his release will not pose a danger to the community."
> *Id.* at 231.   In Diop's case, we weighed the goals of the statute
> against the personal costs to his liberty resulting from his
> detention of roughly two years, eleven months, and concluded
> that Diop's detention was unconstitutional. *Id.*

*Id.* at 474–75.   And the court concluded that "beginning sometime after the six-

month timeframe considered by *Demore,* and certainly by the time Chavez–

Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties

12

outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Id*. at 478.   The court determined that Chavez-Alvarez was entitled to a bond hearing. *Id*.

To the extent the holdings in *Diop* and *Chavez-Alvarez* were grounded in the cannon of constitutional avoidance, those holdings did not survive *Jennings*. *Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020).   But *Jennings* did not call into question the Third Circuit's holdings that detention under § 1226(c) without a bond hearing violates due process if unreasonably prolonged. *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). Rather, *Jennings* left *Diop* and *Chavez-Alvarez*'s "framework for assessing as-applied constitutional challenges intact." *Santos*, 965 F.3d at 210.   Under that framework, aliens detained under § 1226(c) are entitled to a bond hearing once their detention becomes unreasonable. *Id*.

Reaffirming that "[r]easonableness is a 'highly fact-specific' inquiry[,]" in *Santos*, the Third Circuit distilled from *Diop* and *Chavez-Alvarez*, "a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable." *Id*. (quoting *Chavez-Alvarez*, 783 F.3d at 474). Those four factors are: (1) the duration of the alien's detention; (2) whether the

13

alien's detention is likely to continue; (3) the reasons for any delay; and (4)

whether the conditions under which the alien is confined are '"meaningfully

different' from criminal punishment." *Id*. at 211 (quoting *Chavez-Alvarez*, 783

F.3d at 478).   In *Santos*, applying those factors, the Third Circuit concluded that

Santos's detention, which had lasted for more than two-and-a-half years, had

become unreasonable, and thus, he was entitled to a bond hearing. *Id*. at 206.

Applying the factors set forth in *Santos*, we conclude that Malede's detention has

become unreasonable.

### 1.   The First *Santos* Factor.

The first *Santos* factor is the duration of the alien's detention.   The Third

Circuit has identified this factor as the "most important factor." *Id*. at 211.   Here,

Malede has been detained since February 3, 2021, a period of now nearly 18

months to date.   He has been detained less time than the detention at issue in *Diop*

(nearly three years), and *Santos* (more than two-and-a-half years).   But it is more

time than the detention upheld in *Demore* (six months).   And it falls outside the

six-month to one-year timeframe that the court in *Chavez-Alvarez* identified as the

period during which "the burdens to Chavez–Alvarez's liberties outweighed any

justification for using presumptions to detain him without bond to further the goals

of the statute." *Chavez-Alvarez*, 783 F.3d at 478.   It is also longer than the five

months identified in *Diop* after which continued detention without a bond hearing

"becomes more and more suspect." *Diop*, 656 F.3d at 234.

The Third Circuit has declined, however, "to adopt a presumption of

reasonableness or unreasonableness of any duration." *Santos*, 965 F.3d at 211.

Given the lack of such a presumption, and given that the inquiry is fact specific,

courts have reached different conclusions as to the length of detention that

qualifies as reasonable or unreasonable. *See, e.g.*, *Romeo S.K. v. Tsoukaris*, No.

CV 20-5512 (JMV), 2020 WL 4364297, at *12 (D.N.J. July 29, 2020) (concluding

post *Santos* that detention for 11 months was not unconstitutional); *Kleinauskaite*

*v. Doll*, No. 4:17-CV-02176, 2019 WL 3302236, at *6 (M.D. Pa. July 23, 2019)

(finding that "Ms. Kleinauskaite's detention escaped the realm of reason" after 12

months); *Bah v. Doll*, No. CV 3:18-1409, 2018 WL 5829668, at *1 (M.D. Pa. Nov.

7, 2018) (granting habeas petition where the petitioner had been "in custody in

excess of 14 months without an individualized bond hearing"); *Rosales v. Lowe*,

No. 1:18-CV-1302, 2018 WL 6650304, at *3 (M.D. Pa. Dec. 19, 2018) (denying

habeas petition where petitioner had been subject to mandatory detention for less

than 15 months); *Crooks v. Lowe*, No. 1:18-CV-0047, 2018 WL 6649945, at *2

(M.D. Pa. Dec. 19, 2018) (denying habeas petition where the petition was "subject to mandatory detention for approximately eighteen months" during which "his case has proceeded through the removal process at a reasonable pace and there is no indication in the record that the government has improperly or unreasonably delayed the proceedings"); *Fernandez v. Lowe*, No. 3:17-CV-2301, 2018 WL 3584697, at *5 (M.D. Pa. July 26, 2018) (holding that 15-month detention not unconstitutional where the case had "proceeded at a reasonable pace").   After *Jennings*, district courts in the Third Circuit have found "that detention for just over a year pursuant to § 1226(c) is insufficient to amount to an arbitrary deprivation of liberty and will thus not suffice to prove that the statute has been unconstitutionally applied." *Rodriquez-Castillo v. Lowe*, No. 1:19-CV-1000, 2020 WL 820154, at *3 (M.D. Pa. Feb. 19, 2020) (citing cases); *but see Saquib K. v. Tsoukaris*, No. CV 20-3849 (SDW), 2020 WL 2111028, at *2 (D.N.J. May 4, 2020) (granting habeas petition of petitioner "detained for just over a year"), *appeal dismissed*, *Khan v. Field Office Director*, 20-2395 (3d Cir. Oct. 29, 2020); *Amadu K. v. Anderson*, No. 2:20-CV-3220 (BRM), 2020 WL 1864583, at *4 (D.N.J. Apr. 14, 2020) (granting habeas petition of petitioner detained for one

16

year), *appeal dismissed*, *Koroma v. Warden Essex Cty. Correction,* No. 20-2213, 2020 WL 7385081, at *1 (3d Cir. July 13, 2020).

Arguably, Malede's near 18-month detention has reached the tipping point when the length of the detention begins to weigh in favor of a bond hearing. Thus, we find that the first *Santos* factor weighs in favor of a finding of unreasonableness.

### 2. The Second *Santos* Factor.

The second *Santos* factor is whether the alien's detention is likely to continue.   On March 17, 2022, Malede filed an appeal of the IJ's decision to the BIA. *Doc. 1* at ¶ 34.   Malede argues that if the BIA grants his appeal, his case will be remanded back to the IJ for a hearing on his CAT claim. *Id.* at 20.   Malede further contends that if the BIA denies his appeal and his motion to remand, "he will likely petition for review of his removal order and seek a stay pending federal court review, a process that will also take months to conclude." *Id.*   Malede's detention will, therefore, likely continue and supports a finding of unreasonableness. *Santos*, 965 F.3d at 212.

### 3.   The Third *Santos* Factor.

The third *Santos* factor is the reasons for any delay.   Malede asserts that he has not unnecessarily delayed his proceedings and that he has diligently pursued relief. *Doc. 1* at ¶ 58.   Malede argues that the government has caused unnecessary delays in this case by oscillating between issuing an oral or written decision at the immigration court level, which caused a five-month delay. *Id*.   The respondents, however, contend that they have not intentionally delayed or unreasonably prolonged Malede's proceedings, pointing to COVID-19 complications and Malede's request for continuances as factors which caused some delay. *Doc. 14* at 14.

Regarding the delay at the immigration court level, we agree with Malede that the respondents do not meaningfully address or explain this delay.   Indeed, it appears as though the respondents attempt to claim that COVID-19 complications along with Malede's request for continuances are, at least, partially responsible for the delay.   Regarding any potential delays related to COVID-19, it is unclear how exactly COVID-19 specifically caused delays in Malede's case; however, courts have recognized that it is reasonable to expect the "COVID-19 pandemic to contribute to at least some delay in [a] Petitioner's immigration proceedings."

18

*Johan G.A. v. Cirillo*, No. 21-12972, 2022 WL 190668, at *3 (D.N.J. Jan. 20, 2022) (finding that a delay caused by COVID-19 should be considered neutral when conducting the *Santos* test); *see also Tracey M.S. v. Decker*, No. 20-cv-5146, 2020 WL 2316559, at *7 (D.N.J. May 11, 2020) ("Moreover, because the COVID-19 pandemic has resulted in immigration court closures and delays in proceedings across the country, it is inevitable that Petitioner's removal proceedings will be delayed further."); *see also Cristian A.R. v. Decker*, No. 20-3600, 2020 WL 2092616, at *2 (D.N.J. Apr. 12, 2020) (noting that COVID-19 delayed immigration bond proceedings).   Accordingly, because it is unclear exactly how COVID-19 has caused delays in Malede's case, we will consider it a neutral factor.

As for the argument that Malede created a delay by requesting continuances, the respondents suggest that these requests, along with his appeal to the BIA, delayed the case. *Doc. 14* at 14.   But we cannot hold the time it took for Malede to file and litigate his applications for discretionary relief against him. *Santos*, 965 F.3d at 212 ("[W]e will not hold German Santos's appeals and applications for discretionary relief against him either.").   Moreover, Malede's request for an extension of the briefing deadlines to the BIA, which was filed on April 19, 2022, only extended the deadline to May 26, 2022. *See doc. 14-4* at 1.   And there is no

19

evidence that Malede was or is "merely gaming the system to delay [his] removal[,]" rather than presenting good faith claims. *Chavez-Alvarez*, 783 F.3d at 476 ("An argument could be made that aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute.   Requiring a bond hearing in such cases might return us to the very situation that Congress was trying to fix." (footnote omitted)). Thus, we conclude that this factor—the reasons for the delay—weighs slightly in favor of a finding of unreasonableness.

### 4.   The Fourth *Santos* Factor.

The fourth *Santos* factor is whether the conditions under which the alien is confined differ meaningfully from criminal punishment.   In *Santos*, the Third Circuit determined that "[d]espite its civil label," Santos's detention at the Pike County Correctional Facility was "indistinguishable from criminal punishment." 965 F.3d at 213.   And noting that Santos was detained in a prison with convicted criminals and was confined to his cell for 23 hours a day, it concluded that "[t]hose conditions strongly favor a finding of unreasonableness." *Id*.

Here, Malede is also detained at the Pike County Correctional Facility. Malede asserts that he, on four separate occasions, has been confined to his cell for

20

more than 23 hours a day, that he has received the wrong medication, and that he is detained with prisoners serving criminal sentences. *Doc. 1* at ¶ 59.

Given that the final *Santos* factor—the conditions of confinement— "strongly favor[ed] a finding of unreasonableness" in *Santos*, where the petitioner was confined in a facility with convicted criminals and confined to his cell for 23 hours a day, *Santos*, 965 F.3d at 213, it follows that Malede's conditions of confinement also strongly favor a finding of unreasonableness, particularly in light of his medical concerns, given that he is confined in a facility with convicted criminals and he has been confined to his cell, at least several times, for more than 23 hours a day. *See also Johan G.A.*, 2022 WL 190668, at *4 (finding that because the petitioner was locked in a cell for 23 hours a day, his conditions of confinement did not meaningfully differ from criminal punishment).

Given the length of time Malede has already been detained, that he faces possibly lengthy continued confinement while he pursues his appeal to the BIA and (and if necessary, an appeal to the Circuit Court), that the cause for delay is not rightfully attributed to him, and given the conditions under which he is detained, particularly his medical concerns, we conclude that due process demands that

21

Malede be given a bond hearing before an immigration judge under the standards

set forth in *Santos*.[2]

## IV.   Conclusion.

Accordingly, for the foregoing reasons, we will grant Malede's petition for a

writ of habeas corpus and that the court order that an immigration judge conduct a

bond hearing in accordance with *Santos*.   Additionally, we will dismiss Malede's

motion for a temporary restraining order/preliminary injunction as moot.   An

appropriate order follows.


<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge

---

[2]  Although Malede requests that this court conduct the bond hearing, *see doc. 1* at 23, an IJ should conduct the bond hearing. *See Santos*, 965 F.3d at 214 (remanding the case to the district court for the district court to order a bond hearing within 10 days); *Clarke v. Doll*, No. 3:20-CV-31, 2020 WL 4933696, at *4 (M.D. Pa. Aug. 24, 2020) (ordering individualized bond hearing before an IJ within 30 days), *appeal filed*, *Clark v. York County Prison*, 20-3162 (3d Cir. Oct. 30, 2020).